**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **PHILADELPHIA MARINE TRADE** | : | |
| **ASSOCIATION / INTERNATIONAL** | : | |
| **LONGSHOREMEN'S ASSOCIATION** | : | |
| **VACATION FUND,** | : | |
| **Defendant.** | : | **NO. 06-1071** |

Gene E.K. Pratter, J.          Memorandum and Order          January 10, 2007

 Philadelphia Marine Trade Association / International Longshoremen's Association

Vacation Fund (the "Fund") has filed a Motion to Dismiss the United States of America's

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 13(a) in this tax refund case

brought pursuant to Section 7405 of the Internal Revenue Code (the "Code"), 26 U.S.C. § 7405.

For the reasons discussed below, the Motion will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

 The United States originally filed this action in the District of New Jersey (the "New

Jersey Action"). The parties consented to transfer venue to this Court because the New Jersey

Action was related to an action, <u>Philadelphia Marine Trade Association / International</u>

<u>Longshoremen's Fund v. United States</u>, No. 04-4857 (the "Pennsylvania Action"), pending

before this Court and involving the same parties.[1] The parties did not move to consolidate the

---

 [1] In the Pennsylvania Action, O'Neill Consulting Corporation ("O'Neill") originally was
a co-plaintiff. O'Neill is a third-party administrator that handles the day-to-day management and
administrative servicing of the Fund. In its July 17, 2006 Memorandum and Order in the
Pennsylvania Action, the Court determined that O'Neill lacked standing to pursue claims because
O'Neill was not a "taxpayer" with respect to the tax penalties at issue. <u>Phila. Marine Trade
Ass'n / Int'l Longshoremen's Ass'n Vacation Fund v. United States</u>, 2006 U.S. Dist. LEXIS

two actions.  The facts involved in both actions are identical, although the circumstances behind

the reasons each party brought suit are different.

Both cases involve tax penalties paid by the Fund to the Internal Revenue Service

("IRS").  The IRS assessed these penalties due to the Fund's failure to file its tax returns

electronically through the Electronic Fund Transfer System.  The IRS levied the Fund's bank

account for penalties due for the fourth quarter of 1999 and for the second and fourth quarters of

2000.  The Fund sought refunds of those penalties and, eventually, the IRS refunded the penalties

assessed with respect to the second and fourth quarters of 2000.  The Fund brought the

Pennsylvania Action to seek repayment of the penalties for the fourth quarter of 1999.[2]  The

United States brought the New Jersey Action to seek to recover the refunds paid to the Fund for

the second and fourth quarters of 2000.

The Fund brought the Pennsylvania Action on October 15, 2004 and the "Commissioner

of Internal Revenue," whom the Fund had named incorrectly as the sole defendant, filed an

answer, without asserting any crossclaims, on December 17, 2004.  The Court held an initial

pretrial conference on February 2, 2005.  The Court then issued a Scheduling Order that set forth

a bifurcated discovery schedule, allowing the parties limited discovery on the issue of the

timeliness and validity of the Fund's refund claims and, following the disposition of any motions

---

48263 (E.D. Pa. July 16, 2006).  O'Neill is not a party in the New Jersey Action.

[2]  Because the IRS had refunded the penalties levied for the second and fourth quarters of 2000, the penalties for those two quarters were not at issue in the Pennsylvania Action. Conversely, because the Pennsylvania Action concerned only the fourth quarter of 1999, and this claim was decided by the Court in its July 17, 2006 Memorandum and Order, the fourth quarter of 1999 refund is not at issue here. See Phila. Marine Trade Ass'n, 2006 U.S. Dist. LEXIS 48263 at *30-31.

for summary judgment on those issues, additional discovery on the merits of the Fund's refund claims.

The parties conducted discovery on the timeliness of the Fund's refund claims, and on July 14, 2005, the United States moved for summary judgment, arguing that the Fund's refund claims for penalties assessed for the fourth quarter of 1999 were time barred because the Fund submitted its claims to the IRS after the statute of limitations had run.  On July 15, 2004, the Fund moved for summary judgment, arguing that its refund claims, although "informal" in that they were not submitted initially on the proper IRS forms, nevertheless were timely and valid. The Court heard oral argument on the parties' cross motions for summary judgment on September 27, 2005.

On December 1, 2005, while the parties' cross motions for summary judgment were pending in the Pennsylvania Action, the United States brought a separate action – the current New Jersey Action – against the Fund in the District of New Jersey.  In the New Jersey Action, the United States claimed that the refunds to the Fund for penalties relating to the second and fourth quarters of 2000 were erroneous.  Specifically, the United States alleges that on or about December 15, 2003 the IRS erroneously refunded to Fund the sum of $89,501.09 for the penalties associated with the second quarter of 2000 and $3,864.52 for the penalties associated with the fourth quarter of 2000, for a total of $93,365.61.  Compl. ¶¶ 8-9.  The relevant statute of limitations permits a taxpayer to submit a claim for a refund within 3 years from the time the return was filed or 2 years from the time the tax was paid.  26 U.S.C. § 6511(a).[3]  The United

_____

[3] 26 U.S.C. § 6511(a) provides the relevant limitation for a taxpayer to file a claim for a refund.  This provision, in pertinent part, states:

States alleges that the statute of limitations for the Fund to seek a refund had run, which would

bar the Fund from seeking such refund.  Therefore, the United States alleges, the IRS's refund

was erroneous.[4]

 After the United States filed the New Jersey Action, counsel for the Fund sent a letter to

the Court to bring the existence of the New Jersey Action to the Court's attention.  Counsel noted

that when the United States filed the New Jersey Action it failed to list that action as "related" to

the pending Pennsylvania Action and failed to inform counsel for the Fund that the United States

intended to file a separate action.  The United States responded by filing a Status Report with the

Court, in which the United States claimed that the running of the statute of limitations to file its

erroneous refund claim was imminent and that issues of jurisdiction and venue prevented the

United States from filing its claims either as crossclaims in the Pennsylvania Action or as a

related case in the Eastern District of Pennsylvania.  Specifically, the United States noted that

under 26 U.S.C. § 7405(b), an erroneous refund "may be recovered by civil action brought in the

name of the United States."  26 U.S.C. § 7405(b).  The United States argued that because the

---

 (a) Period of limitation on filing claim. Claim for credit or refund of an overpayment of
any tax imposed by this title in respect of which tax the taxpayer is required to file a
return shall be filed by the taxpayer within 3 years from the time the return was filed or 2
years from the time the tax was paid, whichever of such periods expires the later, or if no
return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a).

 [4] On this point, the United States' Complaint is challenging to appreciate.  The United
States describes the relevant statute of limitations at issue, but the Complaint does not specify,
for example, (a) if/when the Fund paid the taxes at issue, (b) if/when the Fund applied for a
refund, (c) in what procedures the IRS engaged to determine whether the penalty was correctly
assessed, (d) why the IRS determined that it should award the refund to the Fund, and (e) how the
IRS determined that the refund was improperly remitted to Defendants.

Fund erroneously had named the "Commissioner of Internal Revenue" instead of the "United States" as a defendant in the Pennsylvania Action, the United States could not assert a valid crossclaim in the name of the "Commissioner." Next, the United States argued that pursuant to 28 U.S.C. § 1396, a tax claim must be brought where the tax liability accrues, the taxpayer resides or where the tax return is filed. 28 U.S.C. § 1396. The United States claims that because none of these requirements would have been satisfied if the United States had filed suit in the Eastern District of Pennsylvania, it filed instead in the District of New Jersey, where the Fund maintains its principal offices.

The Court held a status conference with the parties on February 7, 2006. The next day the Court issued an order substituting the "United States" as a defendant in lieu of the "Commissioner." On March 24, 2006, the New Jersey Action was transferred to this Court as related to the Pennsylvania Action.

Neither party moved to consolidate the two actions. Instead, on May 17, 2006, the Fund filed a Motion to Dismiss the United States' Complaint (Docket No. 3) in the (formerly) New Jersey Action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 13(a) for failure to state a claim upon which relief could be granted and for failure of the United States to bring its claims as compulsory counterclaims in the (original) Pennsylvania Action. The United States filed a brief in Opposition to the Fund's Motion to Dismiss (Docket No. 4), and the Fund submitted a Reply brief (Docket No. 5).

On July 17, 2006, the Court issued a Memorandum and Order granting the United States' motion for summary judgment in the Pennsylvania Action. Phila. Marine Trade Ass'n, 2006 U.S. Dist. LEXIS 48263 at *30-31. The Court held that the Fund's informal requests for a refund

5

of tax penalties for the fourth quarter of 1999 were untimely.  Id.  Therefore, the Fund was not

entitled to proceed to argue the second of the bifurcated issues, namely, the merits of its refund

action, and the Pennsylvania Action was thereby closed.[5]

In the New Jersey Action, the Court held oral arguments on the Fund's Motion to Dismiss

on October 5, 2006.  During oral argument, the Court extended permission to the parties to

submit supplemental briefs on the pending motion.  The Fund elected to submit a Supplemental

Memorandum in Support of its Motion to Dismiss (Docket No. 8).

**DISCUSSION**

**I.      Jurisdiction**

Jurisdiction is proper pursuant to 28 U.S.C. § 1340, which provides that a district court

shall have original jurisdiction of any civil action arising under an Act of Congress providing for

internal revenue.  Pursuant to 26 U.S.C. § 7402(a), a district court has jurisdiction to issue in a

civil action orders "as may be necessary and appropriate for the enforcement of the internal

revenue laws."  26 U.S.C. § 7402(a).

**II.     Standards of Review**

A.      *Motion to Dismiss Pursuant to Rule 12(b)(6)*

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox,

Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as

true all well-pleaded allegations in the complaint and view them in the light most favorable to the

---

[5] The Fund filed a Notice of Appeal with the Court of Appeals for the Third Circuit on
August 16, 2006 (C.A. Docket No. 06-3798).  As of the date of this opinion, the Fund's appeal is
still pending.

non-moving plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

      B.    *Motion to Dismiss Pursuant to Rule 13(a)*

Rule 13(a) requires that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).

## III.    The United States' Complaint States a Claim Upon Which Relief Can be Granted

The Fund argues that the United States' Complaint must be dismissed because where, as in this case, the IRS has made a penalty determination, such determination is entitled to deference and may be reversed by a court only if the IRS abused its discretion in reaching the penalty determination.  Because the United States has not alleged that the IRS abused its discretion, the Fund argues that the United States has failed to state a claim upon which relief can be granted.  However, the Fund's argument employs the wrong legal standard and is, therefore, misplaced.

The United States brought its claims pursuant to 26 U.S.C. § 7405.[6]  Compl. ¶ 1.  Section

---

[6] The United States also brought its claims pursuant to 26 U.S.C. § 7401.  Compl. ¶ 1. Section 7401 of the Code provides that the United States may not bring a civil action for the collection of taxes unless the Secretary of the Treasury authorizes the proceedings and the Attorney General directs that the action be commenced.  26 U.S.C. § 7401.  The United States' Complaint attests that these procedural prerequisites were satisfied.  Compl. ¶ 2.

7405 of the Code provides that the United States may bring a civil action to recover any portion

of a tax imposed which has been erroneously refunded.[7]

As the United States observed, 26 U.S.C. § 7405 vests the United States with the

authority to institute a civil action to recover an erroneous refund.  See also United States v.

Wurts, 303 U.S. 414, 415-416 (1938) ("The Government by appropriate action can recover funds

which its agents have wrongfully, erroneously, or illegally paid.").  In an action to recover an

erroneous refund brought pursuant to 26 U.S.C. § 7405, the United States bears the burden of

proof.  United States v. Commercial Nat'l Bank of Peoria, 874 F.2d 1165, 1169 (7th Cir. 1989)

(citing Soltermann v. United States, 272 F.2d 387 (9th Cir. 1959); United States v. Wood, 79

---

[7] 26 U.S.C. § 7405, in pertinent part, reads:

Action for recovery of erroneous refunds.

(a) Refunds after limitation period. Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514 [26 U.S.C. § 6514], may be recovered by civil action brought in the name of the United States.

(b) Refunds otherwise erroneous. Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514 [26 U.S.C. § 6514]) may be recovered by civil action brought in the name of the United States.

26 U.S.C. § 7405.  Section 6514(a) reads: "A refund of any portion of an internal revenue tax shall be considered erroneous ... [i]f made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed."  26 U.S.C. § 6514(a).

For unexplained reasons, the United States attempts to bring its claim pursuant to 26 U.S.C. § 7405(b) instead of § 7405(a).  Section 7405(a), by reference to § 6514(a), empowers the United States to recover any refund that was erroneously paid after the limitation period for filing a claim has expired.  The only basis upon which the United States claims that the refunds paid to the Fund for the second and fourth quarters of 2000 were erroneous was that the statute of limitations pursuant to 26 U.S.C. §6511(a) –  the later of three years from the time the return was filed or two years from the time the tax was paid – had expired.  Thus, United States has claims under 26 U.S.C. § 7405(a) and not under § 7405(b).

F.2d 286 (3d Cir. 1935)).  The essential issue in an erroneous refund action is whether the taxpayer actually owes the tax at issue.  Therefore, the issue in this case is whether the Fund owes the penalties levied by the IRS for the second and fourth quarters of 2000.

In order to prevail in an action to recover an erroneous refund, the United States must establish (1) that a refund was paid to the taxpayer; (2) the amount of the refund; (3) that the United States's recovery action was timely brought; and (4) that the taxpayers were not entitled to the refund which the government seeks to recover.  United States v. Daum, 1997 U.S. Dist. LEXIS 18391, at *12 (W.D. Pa. Apr. 30, 1997) (citing United States v. Commercial Nat'l Bank of Peoria, 874 F.2d 1165, 1169 (7th Cir. 1989); see also Johnson v. United States, 228 F. Supp. 2d 1218, 1221 (D. Col. 2002) (quoting Daum), aff'd, 76 Fed. Appx. 873 (10th Cir. 2003).[8]

Accepting the United States's factual assertions as true and drawing all appropriate inferences in its favor, the United States has presented a valid claim for relief.  The United States has pleaded that, first, on or about December 15, 2003, the IRS paid a refund to the Fund and, second, the amount of the refund was $93,365.61.[9]  Compl. ¶¶ 8-9. Third, by statute the United States had two years from the date of the payment of the refund to institute its suit to recover an erroneous refund.  See 26 U.S.C. §§ 7405(d), 6532(b).  Since the refund was paid to the Fund, by its own admission, on December 21, 2003, the United States had until December 21, 2005 to file its claim.  The United States filed the New Jersey Action on December 1, 2005.

---

[8]  In Commercial National Bank of Peoria, 874 F.2d at 1169, the court provided a more streamlined fourth element of the same essential test, which required a showing simply "that the taxpayers' refund claims were untimely."

[9]  The Fund's complaint in the Pennsylvania Action avers that the IRS granted the Fund a refund of $93,365.61 on December 21, 2003, which was attributable to the Fund's tax filings for the second and fourth quarters of 2000.  Compl., Pennsylvania Action ¶ 15.

The only remaining item that the United States must prove, either at trial or through a dispositive motion following discovery, is that the Fund is not entitled to the refund that the United States seeks to recover because the Fund's refund claims were untimely.  See Daum, 1997 U.S. Dist. LEXIS 18391, at *12; Johnson, 228 F. Supp. 2d at 1221; Commercial Nat'l Bank of Peoria, 874 F.2d at 1169.  The Fund's Complaint in the Pennsylvania Action stated that (1) the IRS levied the Fund's account on June 25, 2001, and (2) the Fund filed its formal claim for a refund on September 15, 2003.  See Compl., Pennsylvania Action ¶¶ 8, 14.  Thus, the United States claims that the Fund's formal claim was not filed within the two-year period prescribed by 26 U.S.C. §6511(a).[10]  See Compl. ¶ 10.

The Fund argues in its Motion to Dismiss that the United States could only succeed if it can prove that the IRS's penalty determination (i.e. the IRS's decision to grant the Fund a refund in the first place), constituted an abuse of discretion.  The United States was quick to point out that the Fund's legal argument on this point is "illogical."  Pl. Opp'n 1, 4.  Because the United States acts through its agencies, the United States claims it is illogical to ask the United States to challenge itself vis-a-vis a challenge of its own agency's discretion.  Nevertheless, the Fund cites three cases ostensibly in support of its "abuse of discretion" argument.  However, all three cases involved a taxpayer's challenge of an IRS decision whether to waive a taxpayer's penalty.[11]  In

---

[10] By its own admission, the Fund's formal claim was filed on September 15, 2003, outside the two-year period prescribed by 26 U.S.C. §6511(a).  In the Pennsylvania Action, the Fund asserted that it had submitted "informal" claims for a refund.  The Court decided this issue in its July 17, 2006 Memorandum and Order, and determined that the purported informal claims were invalid and, as such, the Fund's claim for a refund was untimely.  See Phila. Marine Trade Ass'n, 2006 U.S. Dist. LEXIS 48263 at *30-31.

[11] See Merino v. Comm'r, 196 F.3d 147 (3d Cir. 1999) (affirming penalties assessed by the Commissioner on the taxpayer, and holding that since appellants failed to request a waiver of

other words, none of the cases cited by the Fund involved a suit initiated by the United States

seeking an erroneous refund from a taxpayer pursuant to 26 U.S.C. § 7405.

When a taxpayer brings an action challenging the IRS's assessment of a tax penalty, then

the correct standard is whether the IRS abused its discretion in making the penalty determination.

However, in an erroneous refund suit brought by the United States against a taxpayer pursuant to

26 U.S.C. § 7405, analytically there is no role for the "abuse of discretion" standard.  Rather, the

United States must prove that the taxpayer is not entitled to the tax at issue, considering the four

elements described above from Daum, Commercial National Bank of Peoria and Johnson.

Because the United States' Complaint here pleads the essential elements for an erroneous

refund action under 26 U.S.C. § 7405, the United States has alleged a claim upon which relief

can be granted, and the Fund's Rule 12(b)(6) Motion to Dismiss will be denied.

## IV.    The United States Was Not Required to Counterclaim in the Pennsylvania Action

The Fund next argues that the Complaint should be dismissed because the United States'

claims should have been brought as compulsory counterclaims in the Pennsylvania Action

pursuant to Federal Rule of Civil Procedure 13(a).  The Fund relies on the "transaction or

occurrence" test employed by the Court of Appeals for the Third Circuit in Transamerica

Occidental Life Insurance Company v. Aviation Office of America, Inc., 292 F.3d 384, 389-90

(3d Cir. 2002), where the court stated:

---

the penalty, the court would not grant a waiver) ; McCoy Enters. v. Comm'r, 58 F.3d 557 (10
Cir. 1995) (affirming the tax court's judgment that taxpayers owed a tax deficiency and assessed
a substantial understatement penalty; held that the penalty assessed by the Commissioner was not
an abuse of her discretion); V-1 Oil Co. v. United States, 899 F. Supp. 468 (D. Idaho 1995)
(holding that the IRS's determination whether to waive a penalty for substantial underpayment
will not be disturbed absent a showing of abuse of discretion).

11

For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978). The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." Id.  Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties.

Transamerica Occidental, 292 F.3d at 389-90.  The Fund argues that under Transamerica Occidental, the Pennsylvania Action and the New Jersey Action enjoyed a "logical relationship" with one another and, consequently, the United States was obligated to bring its claims as counterclaims in the Pennsylvania Action.

In response, the United States claims that (a) because the "Commissioner" was incorrectly named as a party, the "United States" could not assert a valid counterclaim, (b) the United States is not required to counterclaim in tax collection actions, and © the Pennsylvania Action and the New Jersey Actions do not arise out of the same set of facts.

The United States argues that because the Commissioner of Internal Revenue was the only defendant to the Pennsylvania Action,[12] the "United States" could not actually file a counterclaim until the Court entered an order substituting the United States as the defendant on February 8, 2006.[13]  Because the two-year statute of limitations for the United States to bring its

---

[12] Only the United States, and not the Commissioner, has authority to file a suit for an erroneous refund.  See Pl. Opp'n 8; 26 U.S.C. § 7405(b).

[13] The United States asserts that any counterclaim brought by the Commissioner, without authority, would have been subject to dismissal.  Pl. Opp'n 8-9.  Section 7422(f)(2) of the Code provides that if a suit is improper solely by virtue of the taxpayer incorrectly suing an individual employee of the United States instead of suing the United States directly, "the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a

claims would have expired on December 23, 2005, the United States argues that it needed to file a separate action, i.e., the New Jersey Action, in order to preserve its claims, rather than wait to be substituted as a party and possibly miss filing within the statutory period.

Case law in the Third Circuit indicates that the "transaction or occurrence" test for purposes of Rule 13(a) should be viewed broadly, both when considering whether claims are logically related and when an "opposing party" is logically related to a non-party, such that the non-party is bound by Rule 13(a) as well.  Our Court of Appeals has noted that other courts have

---

party...."  26 U.S.C. § 7422(f)(2).  Thus, the attorneys for U.S. Department of Justice representing the "Commissioner" could have asked the Court, at any time, to substitute the "United States" for the "Commissioner" in the pleadings.  Instead, the Department of Justice proceeded to vigorously defend the "Commissioner" in the Pennsylvania Action.  On the *Commissioner's* behalf, the attorneys for the Department of Justice participated in the preparation and filing of a Joint Rule 26(f) Report (Docket No. 6), and filed an Answer (Docket No. 3), a Limited Objection to the Fund's Motion to Amend the Scheduling Order (Docket No. 10), and a Motion for Summary Judgment (Docket No. 15), among other papers filed with the Court.  Only after the same attorney for the Department of Justice filed the Complaint in the New Jersey Action on December 1, 2005, did that attorney bring to the Court's attention, in writing, the precise issue that the "Commissioner" had been incorrectly named as a defendant.

The United States asserts that it included the fact that the Commissioner was incorrectly named as a party as an affirmative defense in its answer in the Pennsylvania Action (filed on December 17, 2004) and raised this issue again during the Court's initial pretrial conference in the Pennsylvania Action.  See Pl. Opp'n 8.  The "affirmative defenses" the United States relies upon, however, do not specifically refer to the fact that the "Commissioner" was incorrectly named as a defendant.  Rather, the Answer filed by the Commissioner contains three affirmative defenses:  (1) that the Fund lacked jurisdiction over the Commissioner under Section 7422(c) of the Code; (2) that the Fund's claims are barred by the statue of limitations; and (3) that O'Neill lacked standing.  Answer, Pennsylvania Action at 1.  None of those affirmative defenses are relevant here.  Section 7422(c) is not relevant because it merely provides that any suit brought against an individual employee, e.g., the Commissioner, for a tax refund shall be treated as if the United States was named as a defendant for res judicata purposes.  See 26 U.S.C. § 7422(c).  In other words, under Section 7422(c) a taxpayer who has sued the "Commissioner" in tax court seeking a refund and lost may not then bring a second action against the "United States" on the same grounds.  This provision has nothing to do with incorrectly naming the "Commissioner" as a defendant in a suit filed in district court.

13

held "that an unnamed party may be so closely identified with a named party as to qualify as an 'opposing party' under Rule 13(a)." Transamerica Occidental, 292 F.3d at 390.  In this regard, the Court of Appeals pointed to Avemco Insurance Co. v. Cessna Aircraft Co., 11 F.3d 998 (10th Cir. 1993), in which the Court of Appeals for the Tenth Circuit held that an insurance company not named as a defendant could constitute an "opposing party" because "'where the insurer has controlled the defense in both actions, there is little to commend allowing the insurer to sit idly by during the subsequent litigation, only to bring a separate action against the very same defendant at a later date.'"  Transamerica Occidental, 292 F.3d at 390 (quoting Avemco, 11 F.3d at 1001).  Further, the Court of Appeals cited Banco Nacional de Cuba v. First National City Bank of New York, 478 F.2d 191 (2d Cir. 1973), in which the Court of Appeals for the Second Circuit stated that in certain cases where a party is "functionally identical" to the defendant, where the parties "acted as a single entity," and where one party is "the alter ego of the other," such party could be an "opposing party" within the meaning of Rule 13(a).  Transamerica Occidental, 292 F.3d at 390-91 (citing Banco Nacional de Cuba, 478 F.2d at 193, 193 n.1).  After considering these cases from other circuits, the Court of Appeals stated that "[w]here parties are functionally equivalent as in Avemco, where an unnamed party controlled the litigation, or where, as in Banco Nacional, an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13."  Transamerica Occidental, 292 F.3d at 391.

From an analytical standpoint, Transamerica Occidental and the cases cited therein clearly imply that the United States should be considered an "opposing party" in this case that should be bound by Rule 13(a).  Although the Fund incorrectly sued the head of an agency of the

14

federal government and not the "United States" itself, in the context of filing a claim for a tax refund, the "Commissioner of Internal Revenue" is clearly the "functional equivalent" of the "United States" and vice versa.  The same attorneys in the Department of Justice represented the "Commissioner" in the Pennsylvania Action and the "United States" in the New Jersey Action. Furthermore, the trial attorney for the Department of Justice admits that he was aware that the "Commissioner" was incorrectly named.  He maintains that he raised this issue in his Answer in the Pennsylvania Action and during a pretrial conference held in February 2005.  Thus, the trial attorney did exactly what the courts cautioned against in Transamerica Occidental and Avemco, in that he caused the United States to "sit idly by during the [Pennsylvania Action], only to bring a separate action against the very same defendant at a later date."  Transamerica Occidental, 292 F.3d at 390 (quoting Avemco Ins. Co., 11 F.3d at 1001).[14]

However, the United States raises another argument based on a principle that, while not excusing its "idleness," actually seems to permit it.  The United States argues that, notwithstanding Transamerica Occidental, the United States is not required to file a compulsory counterclaim in pursuit of collecting federal taxes.  The United States cites several cases outside of the Third Circuit to support this contention.  In particular, the United States relies heavily on Caleshu v. United States, 570 F.2d 711, 714 (8th Cir. 1978), in which the Court of Appeals for

---

[14] The Court notes that Transamerica Occidental and the cases cited in that case by the Court of Appeals all address the concept of  "opposing party" and "functional equivalent" as applied to private parties or corporate entities.  The Fund does not cite a single case where a court held that the United States (or another federal agency, or an officer or employee of the federal government) is considered to be an "opposing party" within the meaning of Rule 13(a), such that when a federal agency is (incorrectly) sued, the "United States" is required to assert counterclaims or relinquish its right to assert those claims at a later date or in a separate proceeding.

15

the Eighth Circuit held that Congress did not intend to require the United States to counterclaim

in a tax refund action.[15]  In Caleshu, the IRS assessed the plaintiff taxpayer with certain taxes.

_____

[15] It appears that this is an issue of first impression in this Circuit.  In Caleshu, the court cited to Flora v. United States, 362 U.S. 145, 166-67 (U.S. 1960), in which the Supreme Court addressed whether a taxpayer must pay the full assessment due before bringing a suit seeking a refund in district court.  Noting the "problems" that might arise if a taxpayer could sue to recover part of the tax assessed in district court and also sue to recover another part of the tax in Tax Court, the Supreme Court stated the following:

> Section 7422 (e) of the 1954 Internal Revenue Code makes it apparent that Congress has assumed these problems are nonexistent except in the rare case where the taxpayer brings suit in a District Court and the Commissioner then notifies him of an additional deficiency. Under § 7422 (e) such a claimant is given the option of pursuing his suit in the District Court or in the Tax Court, but he cannot litigate in both. Moreover, if he decides to remain in the District Court, the Government may – but seemingly is not required to – bring a counterclaim; and if it does, the taxpayer has the burden of proof.  If we were to overturn the assumption upon which Congress has acted, we would generate upon a broad scale the very problems Congress believed it had solved.

Flora, 362 U.S. at 166-67.  Although the Supreme Court did not specifically hold that the United States is not required to bring counterclaims in tax refund actions, it seems clear that the Supreme Court was leaning in this direction.  Further, the factual scenario that the Supreme Court described in the language quoted above is similar to the present case.  Here, the Fund brought the Pennsylvania Action in district court and, through the discovery process in that case, the United States became aware of additional deficiencies, namely, that the refunds previously remitted to the Fund for the second and fourth quarters of 2000 were erroneous.  Under the current statutory regime, the United States could have asserted a counterclaim in the Pennsylvania Action or, as it eventually chose to do, it could have asserted a separate action in district court.

Numerous courts have held or acknowledged, often citing Caleshu and Flora, that the United States is not required to assert a collection action as a counterclaim.  See, e.g., Patzkowski v. United States, 576 F.2d 134, 137 n.1 (8th Cir. 1978) ("We note that the initiation of a refund suit by a taxpayer does not reduce the Government's action for collection under 26 U.S.C. § 7402(a) to the status of a compulsory counterclaim under [Rule 13(a)].  When a taxpayer has sued for a refund, the Government may, of course, assert its collection action as a counterclaim; alternatively, however, it may file a separate collection action."); Interrex, Inc. v. United States, 853 F. Supp. 886, 888 (W.D.N.C. 1994) (citing Caleshu, 570 F.2d at 713-14) ("However, the law is well settled that a collection action need not be asserted as a compulsory counterclaim in a refund suit like this one."); United States v. Webster, 1992 U.S. Dist. LEXIS 16570, at *4-5 (D. Md. Oct. 1, 1992) (finding that United States was not required to file a counterclaim in the

After paying a portion of the taxes, the taxpayer filed suit against the United States pursuant to 26 U.S.C. § 7422 in the district court for the Eastern District of Missouri seeking a refund.  Id. at 712. The United States sought to have the action transferred to the District of Hawaii but, after some procedural wrangling, the government's motion to transfer venue was denied.  The government then brought a separate action pursuant to 26 U.S.C. § 7402(a) in the District of Hawaii.  Id. at 712-13.  The plaintiff then filed a motion in the Eastern District of Missouri to stay the Hawaii action.  Id.  The district court granted the plaintiff's motion, holding that the government's collection action was a compulsory counterclaim under Federal Rule of Civil Procedure 13(a).  Id.  On appeal, the Court of Appeals for the Eighth Circuit reversed.  The court of appeals held that Rule 13(a) did not apply because Congress did not intend tax collection actions brought by the United States to be compulsory counterclaims.  Id. at 713-14.  Thus, the court ruled that the United States could bring a separate action to recover an erroneous refund notwithstanding the fact that the plaintiff taxpayer previously had initiated a suit with a "logical connection" to the United States' refund suit.  Id.

The facts in Caleshu are very similar to the current action and the Caleshu court's reasoning is persuasive.  Section 7405 of the Code permits the United States to bring an action to recover an erroneous refund.  The United States has chosen to exercise that right, notwithstanding the existence of a similar, related action between the same parties that was

Claims Court against certain defendants but could instead commence a separate action against the defendants plus another defendant in district court); but see Russell v. United States, 592 F.2d 1069, 1073 (9th Cir. 1979) (Grant, J., concurring) (noting that Congress intended for taxpayers to exercise the choice of jurisdiction in tax refund actions, not the United States, and that decisions that do not require the United States to assert a counterclaim and instead permit the United States to bring a separate action against the taxpayer, may "work to defeat the Congressional purpose of choice of forum").

pending in this Court when the United States filed its action.  Therefore, the Fund's Motion to

Dismiss will be denied on this issue as well.[16]

---

[16]  The United States also presents the argument that it was not required to bring a counterclaim in the Pennsylvania Action because the claims in both actions do not arise out of the same set of facts.  This assertion entirely lacks merit and risked irretrievably undermining the United States' other, meritorious arguments.  It requires no imagination to see that the facts underlying the two actions are *identical*.  In the Pennsylvania Action, the Fund presented facts relating to tax penalties it had paid for three specific fiscal quarters, i.e., the fourth quarter of 1999 and the second and fourth quarters of 2000.  The Fund contended that the IRS correctly refunded penalties for two of those three quarters (the second and fourth quarters of 2000) and argued that the IRS should similarly refund the third remaining quarter (the fourth quarter of 1999).  The correspondence that was introduced into the record between the Fund, O'Neill and the IRS largely pertained to penalties associated with all three fiscal quarters.  The Court discussed those facts in detail in its July 17, 2006 opinion.  See Phila. Marine Trade Ass'n, 2006 U.S. Dist. LEXIS 48263 at *2-11. In the New Jersey Action, the United States seeks to recover the refunds the IRS had paid for the *same two quarters* that the Fund had thought were safely within its grasp in the Pennsylvania Action, i.e., penalties related to the second and fourth quarters of 2000.  Not only does the New Jersey Action relate to two of the same fiscal quarters as the Pennsylvania Action, but it would be reasonable to surmise that the documentary evidence that the United States will rely on in this action will be identical to the documents produced during discovery in the Pennsylvania Action.  Furthermore, it is also reasonable to surmise that but for the Fund bringing its claims in the Pennsylvania Action related to all three quarters, the IRS may not have ever realized that a viable erroneous refund claim with respect to the second and fourth quarters of 2000 existed.

It is clear that had the Fund correctly named the United States as a party to the Pennsylvania Action, or had the attorneys representing the United States taken the initiative to request the Court to substitute the United States as the correct party, the United States could have appropriately asserted a counterclaim that would be *identical* to the Complaint it filed in the New Jersey action.  Of course, the United States is correct in asserting that each fiscal quarter must be decided on its own facts and merits.  Pl. Opp'n 10.  The Fund has not argued otherwise, and nothing in the Court's opinion contradicts that proposition.  However, because each fiscal quarter must be decided on its own facts and merits in no way implies that a court should not attempt to resolve issues relating to two or more fiscal quarters when the facts and circumstances underlying the various claims are identical, as they are here, and when deciding multiple quarters in one litigation would preserve limited judicial resources and save the parties substantial time and money.  The United States' argument on this point is further belied by the numerous citations in the United States' brief in Opposition to the pleadings and other documents in the Pennsylvania Action, including the Fund's complaint.  Judging by the United States' reliance on the Fund's complaint in the Pennsylvania Action to support its own factual assertions in the current New Jersey Action, it is clear that the United States believes that the facts in both actions are

**III.     Dismissal With Prejudice to the United States' Ability to Amend its Answer in the Pennsylvania Action Does Not Apply**

The Fund argues that if the Court dismiss this action on the ground that it should have been raised as a counterclaim in the Pennsylvania Action, then the Court should determine that the United States is precluded from amending its answer in the Pennsylvania Action based on its bad faith, prejudice, undue delay and dilatory motive, and futility.[17]  Because the Court will deny the Fund's Motion to Dismiss, the Court need not address this argument.

---

substantially the same.  To nonetheless argue otherwise, as the United States does, is simply incorrect.

[17] The Fund essentially claimed that the trial attorney for the Department of Justice handling this matter exercised bad faith in (a) using the threat of a counterclaim as a bargaining chip, (b) filing the present action in New Jersey and not informing the Fund or its counsel, and (c) engaging in disingenuous settlement discussions with the Fund.  The Fund asserts that maintaining both the Pennsylvania and the New Jersey actions would prejudice the Fund financially and burden the Fund with having to conduct further, duplicative discovery.  The Fund also presents "undue delay"and "dilatory motive" arguments based on its corollary argument that the United States should have raised its claims in a counterclaim.  Lastly, the Fund brings a "futility" argument based on the likelihood that the United States' Complaint will be dismissed under Rule 12(b)(6).

19

CONCLUSION

For the reasons stated above, the Fund's Motion to Dismiss will be denied.[18]


S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

January 10, 2007

─────────────────────

[18] In Caleshu, Judge Ross concurred in the court's opinion with respect to its statement of the law on the subject of compulsory counterclaims in tax refund situations. Caleshu, 570 F.2d at 715 (Ross, J., concurring). However, Judge Ross wrote separately to criticize the tactics the IRS employed, "in forcing a taxpayer to litigate his claim several thousand miles from his home after the first suit had been brought by the taxpayer in his home state," which Judge Ross characterized as "legal harassment," the "practical result" of which "may very well be the inability of the taxpayer to get his full day in court." Id.

A similar sentiment may well be appropriate here. If the Court were to give the United States the benefit of the doubt, it is reasonable that the United States may have wanted to file a separate suit, as it is entitled to do, in order to preserve its tax collection action against the impending expiration of the statute of limitations. However, the United States' overreaching arguments and outright misstatements of facts in the motion papers before this Court provide reasons to question the United States' tactics. Although the Court found the Fund's "bad faith" arguments unpersuasive as they related to the Fund's legal claims, the Fund has alleged questionable tactics on the part of the Fund's opponent. For example, the Fund asserts that the United States brought the New Jersey Action to retaliate against the Fund for bringing the Pennsylvania Action in the first place. See Def. Mot. Dismiss 11-12 ("During the October 11, 2005 negotiations, [Trial Attorney, Tax Division] Mr. Smeltzer admitted that the USA never would have asserted counterclaims against the Fund if the Fund and O'Neill had not initiated the Pennsylvania Action."); Def. Mot. Dismiss Ex. B, Statement of J. Sirback ¶ 6 ("Mr. Smeltzer explained that, absent the Pennsylvania Action, the USA's counterclaims against the Fund would not have come to its attention"). And of course, by not bringing counterclaims in an action that was already pending, the United States created the exact problem that the Court of Appeals sought to avoid in Transamerica Occidental where "separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'" Transamerica Occidental, 292 F.3d at 389-90 (quoting Xerox Corp. v. SCM Corp., 576 F.2d at 1059. While the Court comes to no conclusions with respect to the actual motivations of counsel or efficacy of the competing conduct, the Court expects the remainder of this litigation to proceed with all counsel comporting themselves in a manner that brings credit to their respective clients and to their profession.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **PHILADELPHIA MARINE TRADE** | : | |
| **ASSOCIATION / INTERNATIONAL** | : | |
| **LONGSHOREMEN'S ASSOCIATION** | : | |
| **VACATION FUND,** | : | |
| **Defendant.** | : | **NO. 06-1071** |

## O R D E R

AND NOW, this 10th day of January, 2007, upon consideration of the Motion to Dismiss filed by Philadelphia Marine Trade Association / International Longshoremen's Association Vacation Fund (the "Fund") (Docket No. 3), the United States' response thereto (Docket No. 4), the reply brief filed by the Fund (Docket No. 5) and the supplemental memorandum filed by the Fund (Docket No. 8), it is **ORDERED** that Fund's Motion to Dismiss (Docket No. 3) is **DENIED**. The Fund shall file its answer in this action within twenty (20) days after its receipt of this Order.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge